**NEC ELECTRONICS, INC.,
Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–
Appellee.**

**No. 97–1403.**

United States Court of Appeals,
Federal Circuit.

May 19, 1998.

Bruce N. Stratvert, Attorney, Commercial Litigation Branch, Civil Division, International Trade Field Office, U.S. Department of Justice, of New York City, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, of Washington, DC; and Joseph I. Liebman, Attorney-In-Charge, International Trade Field Office. Of counsel was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of New York City.

Robert Scott Whiteley, Horton, Whiteley & Cooper, Oakland, CA, argued,for plaintiff-appellant. With him on the brief was Craig A. Mitchell, Horton, Whiteley & Cooper, of Newport Beach, CA.

Before MICHEL, PLAGER, and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

NEC Electronics, Inc. ("NEC") appeals the judgment of the United States Court of International Trade affirming the classification of certain laser diodes and laser diode modules (together, the "laser diodes") by the United States Customs Service ("Customs") under subheading 8541.40.20 of the Harmonized Tariff Schedule of the United States (the "HTSUS"). *NEC Elecs., Inc. v. United States*, No. 93–04–00201, slip op. 97–38, 1997 WL 155400 (Ct. Int'l Trade Mar. 28, 1997). This case was submitted for our decision following oral argument on April 7, 1998. Because, based upon the express language and structure of the HTSUS, as further supported by the Explanatory Notes and legislative history, the laser diodes were properly classified under subheading 8541.40.20, we affirm.

## BACKGROUND

NEC imported the laser diodes into the United States during late 1991. Customs initially classified the merchandise under various tariff classifications with duties of 9%, 4.2%, and 2%. On June 3, 1992, NEC filed a protest which was denied on October 6, 1992. NEC filed suit in the Court of International Trade on April 1, 1993, contesting the denial of its protest. In response to NEC's suit, Customs indicated that it intended to classify all of the merchandise in question as "light-emitting diodes (LED's)" under subheading 8541.40.20 of the HTSUS for which there was a duty of 2%. At trial, NEC argued that

Customs's most recent classification was incorrect and that the merchandise should instead have been classified as "other diodes" under subheading 8541.40.60, which carries no duty.

There is a broad range of diodes in commercial production that are subject to various classifications under the HTSUS. Photosensitive diodes, such as solar cells and photodetectors, absorb light and generate an electrical current by means of "carrier transportation." Light-emitting diodes are commonly used as small lamps to indicate whether a device, such as a computer, is on or off. Unlike photosensitive diodes, light-emitting diodes discharge light when an electrical current is passed through a p-n junction. The electrical current causes the recombination of electrons and holes across the light-emitting diode's p-n junction thereby resulting in the emission of photons. This technique is known as the "recombination of carriers," as opposed to the technique of "carrier transport" used in photosensitive diodes. Although laser diodes use a p-n junction to produce light, laser diodes require additional elements to those contained in a typical light-emitting diode in order to stimulate the emission of photons, to strengthen the intensity of the photon emission, and to guide the photons into a more focused or coherent emission. These additional elements include a set of mirrors to redirect stray photons back into the p-n junction as well as a lens to focus the photons. However, like typical light-emitting diodes, laser diodes operate by means of recombination of carriers rather than carrier transport.

The Court of International Trade determined that NEC did not meet its burden of demonstrating that the laser diodes were improperly classified as "light-emitting diodes (LED's)" under subheading 8541.40.20 of the HTSUS or that the laser diodes were correctly classifiable as "other diodes" under subheading 8541.40.60. The court initially noted that NEC presented "credible" evidence that the commercial and scientific communities would not view the subject laser diodes as "LEDs." *NEC,* slip op. at 8. However, the court then explained that it was persuaded that the Congress intended to include laser diodes under this subheading as evidenced by the Explanatory Notes which accompany the HTSUS. *See id.* at 8–10. The Court of International Trade further buttressed its conclusion by pointing out that the "light-emitting diodes (LED's)" subheading appears to cover technology utilizing p-n junctions (such as laser diodes), whereas the tariff term "other diodes" appears to cover other types of technology.

On appeal, NEC contends that the language of subheading 8541.40.20 is clear and unambiguous on its face in excluding laser diodes from its coverage. In particular, NEC argues that because 8541.40 refers to "light-emitting diodes" while 8541.40.20 refers to "light-emitting diodes *(LED's)* " (emphasis added), the latter term was intended to be more restrictive than the former. NEC also asserts that the Court of International Trade's reliance on the Explanatory Notes was misplaced because those Explanatory Notes only refer to the six-digit international level tariff classification rather than to the eight-digit national level tariff classification. Furthermore, NEC maintains that the fact that laser diodes utilize p-n junctions does not indicate that they should be classified under subheading 8541.40.20 because all of the products classifiable at the six-digit level can also employ p-n junction technology. Consequently, NEC argues that its laser diodes should have been classified as "other diodes" under subheading 8541.40.60, rather than "light-emitting diodes (LED's)" under subheading 8541.40.20.

## DISCUSSION

 The interpretation of a tariff provision is a question of law reviewed *de novo,* but the determination of whether particular merchandise comes within that construed provision is a question of fact reviewed for clear error. *See National Advanced Sys. v. United States,* 26 F.3d 1107, 1109 (Fed.Cir. 1994). We agree with the Court of International Trade's interpretation of subheading 8541.40.20 of the HTSUS to include laser diodes and find no clear error in its determination that the merchandise at issue was properly classified under that provision. The opinion of the court was generally well-stat-

ed, and clearly correct. For further details as to the legal accuracy of Customs's classification, it may usefully be consulted.

As an initial matter, the structure and wording of the pertinent HTSUS provisions strongly suggest that the laser diodes should be classified under subheading 8541.40.20. Subheading 8541.40 describes two mutually exclusive categories of devices which fall within its ambit: "[1] Photosensitive semiconductor devices, including photovoltaic cells whether or not assembled in modules or made up into panels; [2] light-emitting diodes." NEC does not dispute that its laser diodes are classifiable under subheading 8541.40 and, of the two categories of devices listed in that subheading, it cannot dispute that laser diodes are light-emitting diodes rather than light-absorbing, photosensitive semiconductor devices. Thus, although apparently accepting that its laser diodes are "light-emitting diodes" for purposes of the six-digit subheading, NEC disputes that its laser diodes are "light-emitting diodes (LED's)" for purposes of the eight-digit breakout. NEC's argument is based upon no more than the addition of the abbreviation "(LED's)" after the otherwise identical phrase "light-emitting diodes." We find no merit in NEC's argument that the addition of "(LED's)" evidences an intent to narrow the scope of the eight-digit subheading vis-à-vis the six-digit subheading. Rather, on a plain reading, the inclusion of this equivalent term is simply intended to provide an authorized abbreviation for "light-emitting diodes." We do not consider the fact that this abbreviation is used only at the eight-digit level to be of any interpretative significance.[1] Thus, we interpret the term "light-emitting diodes (LED's)" to encompass laser diodes.

This interpretation is further bolstered both by the Explanatory Notes to the HTSUS and the legislative history of the relevant provisions. Explanatory Note 85.41(C), entitled "Light Emitting Diodes," contains a paragraph discussing "laser diodes." We cannot accept NEC's argument that this Explanatory Note is only pertinent to the meaning of the six-digit subheading "light-emitting diodes" but not the eight-digit subheading "light-emitting diodes (LED's)." Given the insignificance of the parenthetical abbreviation, the Explanatory Note is equally applicable to both subheadings and indicates that laser diodes are within the scope of subheading 8541.40.20.[2] In addition, the portions of the legislative history of the pertinent provisions of the HTSUS proffered by the government, further support the classification of the merchandise at issue under subheading 8541.40.20.

Finally, although the Court of International Trade expressly relied in part upon the utilization of p-n junction technology in explaining the distinction between subheadings 8541.40.20 and 8541.40.60, we choose not to rely upon such a distinction. We are not convinced by the record before us that p-n junction technology is found only in light-emitting diodes and consider that the more significant distinction is between technology utilizing recombination of carriers and technology employing carrier transport. Since, as noted earlier, NEC's laser diodes operate by recombination of carriers, regardless of

---

1. Likewise, we find utterly unpersuasive the government's argument that the use of the apostrophe in "(LED's)" indicates an intent to use the possessive, rather than the plural, and thereby imply that the subheading encompasses "all LEDs." It may be true that the use of an apostrophe in the plural form of abbreviations is a questionable grammatical construct. See, e.g., The New Fowler's Modern English Usage 61 (R.W. Burchfield ed., 3d ed.1996) (explaining that, although once common in the plural of abbreviations, the apostrophe "is now best omitted" unless its omission might lead to confusion). Nevertheless, the United States Government Printing Office Style Manual 118 (1984), which presumably might have been relied upon by Congress when drafting the eight-digit breakouts of

the HTSUS, indicates that an apostrophe should be used to indicate the plural form of an abbreviation. In any event, the implication the government draws is unjustified.

2. We recognize that the Court of International Trade in its discussion of Explanatory Note 85.41(C) occasionally misquoted its title as reading "light-emitting diodes (LED's)" rather than "Light Emitting Diodes." See NEC, slip op. at 9–11. However, we do not regard this error as material to the outcome of this case because the substance of the Explanatory Note does indeed support the court's interpretation and the substance, not just the title, is what was relied upon by the court.

which technological distinction is used, the laser diodes were properly classified.

## CONCLUSION

Because the merchandise at issue was properly classified under subheading 8541.40.20 of the HTSUS, the judgment of the Court of International Trade is

*AFFIRMED.*