# United States Court of Appeals for the Federal Circuit

UNITED STATES,
*Plaintiff-Appellee,*

v.

TREK LEATHER, INC.,
*Defendant,*

AND

HARISH SHADADPURI,
*Defendant-Appellant.*

2011-1527

Appeal from the United States Court of International Trade in No. 09-CV-0041, Judge Nicholas Tsoucalas.

Decided: July 30, 2013

STEPHEN C. TOSINI, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for plaintiff-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director. Of counsel was SCOTT A. MACGRIFF, Trial Attorney.

JOHN J. GALVIN, Galvin & Mlawski, of New York, New York, argued for defendant-appellant.

———————————

Before DYK, PLAGER, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Dissenting opinion filed by *Circuit Judge* DYK.

O'MALLEY, *Circuit Judge.*

Mr. Harish Shadadpuri ("Shadadpuri") appeals the decision of the United States Court of International Trade granting in part the United States' ("the government") motion for summary judgment, finding Shadadpuri liable for gross negligence in connection with the entry of imported merchandise into the United States and imposing penalties under 19 U.S.C. § 1592(c)(2) for that conduct. Shadadpuri contends that corporate officers of an "importer of record" are not directly liable for penalties under § 1592(c)(2). In the circumstances presented here, we agree. We find that, absent piercing Trek's corporate veil to establish that Shadadpuri was the actual importer of record, as defined by statute, or establishing that Shadadpuri is liable for fraud under § 1592(a)(1)(A), or as an aider and abettor of fraud by Trek under § 1592(a)(1)(B), we must reverse the penalty assessment against Shadadpuri.[1]

———————————

[1] While it appears from the record that the government would have been able to allege one or more of these theories of liability, it chose not to do so below and has expressly chosen not to seek an additional opportunity to do so here on appeal. The government relies solely on its claim that it can avoid having to make the showings Shadadpuri contends it must make by, instead, seeking to

## I.

The relevant facts are not in dispute. Trek Leather, Inc. ("Trek") was the importer of record for seventy-two (72) entries of men's suits between February 2, 2004, and October 8, 2004. Mercantile Electronics, LLC ("Mercantile Electronics"), which is not a party to this suit, was the consignee of the men's suits. Shadadpuri is the president and sole shareholder of Trek, and is also a forty-percent (40%) shareholder of Mercantile Electronics. There is no evidence or even allegation that Shadadpuri is himself a licensed customs broker.

Trek and Mercantile Electronics purchased a number of fabric "assists" and provided them to manufacturers outside the United States. An assist is defined by 19 U.S.C. § 1401a(h)(1)(A) as, among other things: "materials, components, parts, and similar items incorporated in the imported merchandise." 19 U.S.C. § 1401a(h)(1)(A)(i). The foreign manufacturers used the assists to make men's suits which Trek imported into the United States. In August 2004, the United States Customs and Border Protection ("Customs") investigated Trek's import activities and determined that the relevant entry documentation failed to include the cost of the fabric assists in the price paid or payable for the men's suits which, in turn, lowered the amount of duty payable by Trek. In November 2004, Customs informed Shadadpuri that Trek had failed to declare the value of the fabric assists when importing the merchandise.

Shadadpuri previously failed to include assists in entry declarations when acting on behalf of a corporate importer. In 2002, Customs discovered that Shadadpuri, acting on behalf of Mercantile Wholesale Inc. ("Mercantile"), failed to include in Mercantile's entry documenta-

---

impose direct liability upon him for penalties under § 1592(c)(2).

tion the cost of fabric assists and trim when identifying the price actually paid or payable for the merchandise. The same Customs Import Specialist that conducted the investigation currently at issue discovered the discrepancies in 2002 and explained to Shadadpuri that assists were dutiable and must be included on import documentation. As a result of the 2002 investigation, Mercantile paid $46,156.89 in unpaid duties after admitting it failed to add the value of the assists in the price actually paid or payable for merchandise. Customs did not take any action against Shadadpuri personally.

When confronted in 2004 regarding the assists at issue in this case, Shadadpuri conceded he knew Trek should have included the value of the fabric assists in its duties. Neither Shadadpuri nor Trek paid the balance of the duties owed in connection with the assists. The government filed suit in the Court of International Trade, claiming that both Trek and Shadadpuri, in his personal capacity, were liable for a penalty of $2,392,307, for fraudulently, knowingly, and intentionally understating the dutiable value of the imported men's suits. *See United States v. Trek Leather, Inc. and Harish Shadadpuri*, Case No. 1:09-cv-00041-NT, Doc. No. 2 ("Complaint"). The government alternatively alleged that Shadadpuri and Trek were either: (1) grossly negligent and liable for a civil penalty of $534,420.32, or (2) negligent and liable for a civil penalty of $267,310.16. The government further sought the unpaid customs duties of $45,245.39.

The statutory scheme which governs these claims and requests for penalties contains two relevant sections. First, § 1592(a) defines what conduct is subject to a penalty. It provides:

(a) Prohibition

    (1) General Rule

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

(B) may aid or abet any other person to violate subparagraph (A).

19 U.S.C. § 1592(a). Section 1592(c) then describes the penalties which may be assessed, depending on the level of an offender's culpability. It provides, in relevant part:

(c) Maximum penalties

(1) Fraud

A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise.

(2) Gross negligence

A grossly negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—

(A) the lesser of—

> (i) the domestic value of the merchandise, or
>
> (ii) four times the lawful duties, taxes, and fees of which the United States is or may be deprived, or

(B) if the violation did not affect the assessment of duties, 40 percent of the dutiable value of the merchandise.

(3) Negligence

A negligent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed—

(A) the lesser of—

> (i) the domestic value of the merchandise, or
>
> (ii) two times the lawful duties, taxes, and fees of which the United States is or may be deprived, or

(B) if the violation did not affect the assessment of duties, 20 percent of the dutiable value of the merchandise.

19 U.S.C. § 1592(c).

The government moved for summary judgment on all claims, and Trek and Shadadpuri cross-moved for partial summary judgment on the fraud claim. Shadadpuri also cross-moved for summary judgment with respect to the negligence claims, contending that, because he was not

the "importer of record"—and was, instead, only a corporate officer thereof—no such cause of action could lie against him. During oral argument before the Court of International Trade, Trek conceded it had been grossly negligent, but denied having committed intentional fraud; Shadadpuri continued to deny liability on all counts.

Shadadpuri argued that, because Trek, a corporation, was the importer of record, he could only be liable personally if the government either pierced Trek's corporate veil or established that Shadadpuri either had committed fraud or aided and abetted fraud by Trek, making him liable under § 1592(a)(1)(B) ("[no person] may aid or abet any other person to violate subparagraph (A)"). Shadadpuri contended—relying on our decision in *United States v. Hitachi America, Ltd.*, 172 F.3d 1319 (Fed. Cir. 1999) ("*Hitachi*")—that, because one cannot "aid and abet" negligent conduct, he cannot be liable for Trek's admitted negligence unless the government proves he was acting as Trek's alter ego, rather than as an officer of the corporation acting in his capacity as such.

Given Trek's concession of gross negligence, the government abandoned its fraud claim against Trek and asked for judgment on the gross negligence claim and a penalty under § 1592(c)(2). As for Shadadpuri, the government declined his invitation to either pierce Trek's corporate veil or to prove that Shadadpuri had aided or abetted a fraud by Trek. Instead, the government claimed it could prevail on its negligence claims against Shadadpuri in the absence of such proofs solely because Shadadpuri is a "person" within the meaning of § 1592(a) generally.

The Court of International Trade agreed with the government on all points. As to Trek, the court granted summary judgment in favor of the government and assessed a $534,420.32 penalty under §1592(c)(2), for gross negligence in connection with its import documentation.

The Court of International Trade then found Shadadpuri jointly and severally liable for the same penalty, finding that Shadadpuri is a member of the class of "persons" subject to liability under § 1592(a), whether or not he is the "importer of record," and that the plain language of § 1592(a) "does not recognize an exception for negligent corporate officers." *See United States v. Trek Leather, Inc. and Harish Shadadpuri*, Case No. 1:09-cv-00041, Slip Op. 11-68 at 9 (Doc. No. 44) (citations omitted). The Court of International Trade reasoned that Shadadpuri was personally responsible for examining all appropriate documents before forwarding them to a customs broker, and that Trek could not have been grossly negligent but for Shadadpuri's involvement in that negligence. *Id.* at 9. The court found the parties' motions for summary judgment on the fraud claim to be moot and entered an order dismissing those claims. *Id.* at 10-11. Shadadpuri timely appealed; the government has not appealed the dismissal of the fraud claims.

On appeal, Shadadpuri argues that only "importers of record" may be *directly* liable for a penalty assessed under § 1592(c)(2) or (c)(3), based solely on assertions of negligence. Sections 1484 and 1485 of Title 19 set forth the level of reasonable care required in conjunction with the entry of merchandise, and, relying on *Hitachi*, Shadadpuri contends that those sections are directed at requiring "importers of record" to use reasonable care in providing Customs with true and correct documentation regarding the value of imported merchandise. And, because §§ 1484 and 1485 only apply to "importers of record," parties other than the importer of record cannot be *directly* liable for a penalty under § 1592(c)(2) or (c)(3) for *negligent* failure to comply with those provisions. He asserts that liability for corporate officers of an importer of record may only arise: (1) where those officers are liable for fraud under 19 U.S.C. §§ 1592(a)(1)(A) or (a)(1)(B), or (2) by way of the common law principle of piercing the corporate veil so as

to equate the corporate officer with the importer of record. He therefore argues that, because he was not the importer of record (Trek was) and has not been charged with fraud, or aiding and abetting fraud, he cannot be directly subject to a penalty under § 1592(c)(2).

Shadadpuri further contends, citing both *Hitachi* and *United States v. Action Products, International*, 25 CIT 139, 144 (Ct. Int'l Trade 2001), that, when an importer of record is liable only for negligence or gross negligence (as distinct from fraud), a third party cannot be liable for aiding and abetting that negligence. His premise is that someone cannot be liable for *negligent* aiding and abetting because aiding and abetting requires a demonstration of knowledge or intent. *See Hitachi*, 172 F.3d at 1337-38.

The government counters that the plain language of § 1592 mandates that "no person" shall import merchandise into the United States by means of materially false statements or omissions and that the provision is not limited to "importers of record" or those committing fraud, but also includes corporate officers of a corporate importer of record. On this basis, the government contends that the Court of International Trade properly held Shadadpuri liable for a direct violation of § 1592(a) and properly imposed penalties under § 1592(c)(2). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II.

We review legal determinations from the Court of International Trade without deference and review factual questions for clear error. *NEC Elecs., Inc. v. United States*, 144 F.3d 788, 790 (Fed. Cir. 1998). We agree with the government that the word "person," as it appears in 19 U.S.C. § 1592(a), should be read broadly. Section 1592 is not a free standing criminal sanction, however. Accordingly, the operative question is not simply whether Shadadpuri is a "person" as defined in § 1592, but whether a corporate officer can be personally liable for a corpo-

rate importer of record's negligent violation of §§ 1484 and 1485 and punished under § 1592(c)(2) therefor.

We first turn to the statutory structure of the Tariff Act. Section 1484 of Title 19 sets forth the requirements and timing for making entry of imported merchandise into the United States:

(a) Requirement and time

(1) Except as provided in sections 1490, 1498, 1552, and 1553 of this title, one of the parties qualifying as "importer of record" under paragraph (2)(B), either in person or by an agent authorized by the party in writing, shall, using reasonable care—

(A) make entry therefor by filing with the Bureau of Customs and Border Protection such documentation or, pursuant to an authorized electronic data interchange system, such information as is necessary to enable the Bureau of Customs and Border Protection to determine whether the merchandise may be released from custody of the Bureau of Customs and Border Protection;

(B) complete the entry, or substitute 1 or more reconfigured entries on an import activity summary statement, by filing with the Customs Service the declared value, classification and rate of duty applicable to the merchandise, and such other documentation or, pursuant to an electronic data interchange system, such other information as is necessary to enable the Customs Service to—

(i) properly assess duties on the merchandise,

> (ii) collect accurate statistics with respect to the merchandise, and
>
> (iii) determine whether any other applicable requirement of law (other than a requirement relating to release from customs custody) is met.

19 U.S.C. § 1484(a).

Section 1484 provides that a party qualifying as an "importer of record," either in person or via an authorized agent, must use "reasonable care" in completing and submitting entry documentation to enable Customs to properly assess duties on the merchandise. An "importer of record" is defined as the owner or purchaser of the merchandise, or a customs broker with a valid license under 19 U.S.C. § 1641 designated by the owner, or a purchaser or consignee of the merchandise. 19 U.S.C. § 1484(a)(2)(B). The importer of record is required to use reasonable care when providing Customs documents demonstrating the declared value and rate of duty applicable to the merchandise so that Customs can, among other things, properly assess duties on the merchandise. 19 U.S.C. § 1484(a)(1)(B). An importer of record making entry under the provisions of § 1484 must also declare under oath that all the statements in the entry documents are true and correct. 19 U.S.C. § 1485(a)(3). Notably, the obligations of §§ 1484 and 1485 are also imposed on any agent "authorized in writing" by the importer of record to act on its behalf with respect to its duties under those sections.

Section 1592 provides specific penalties for failing to make a proper entry, whether through fraud, gross negligence, or even mere negligence. As the Court of International Trade observed in *United States v. Rockwell Automation, Inc.*, 462 F. Supp. 2d 1243, 1246-47 (Ct. Int'l Trade 2006), "[i]n the event that Customs believes an

importer failed to meet its obligations under [the Tariff Act of 1930], Customs may seek civil penalties under Section 592 of [the Tariff Act of 1930]."

Section 1592(a) focuses on particular conduct: the entry of merchandise into the United States. Specifically, § 1592(a) bars "person[s]" from *entering*, *introducing*, or *attempting to enter or introduce*, merchandise into the United States by way of fraud, gross negligence, or negligence. 19 U.S.C. § 1592(a). The provision focuses on such improper entry, introduction, or attempted entry or introduction of merchandise by means of any written or oral statement or act that is materially false, or contains a material omission. *Id.* Section 1592 does not punish all fraud or negligence in dealings with Customs, it punishes such acts only when they occur in connection with the "entry" of merchandise into the United States and only when they are of such character as to affect Customs' decision-making when assessing duties in connection with such entry. *See United States v. Thorson Chem. Corp.*, 795 F. Supp. 1190, 1197-98 (Ct. Int'l Trade 1992). In this context, entry is defined as filing information to enable Customs to determine whether the subject merchandise may be released from custody and enable Customs to assess duties on the merchandise, collect accurate statistics, and determine whether any other applicable requirements are met. 19 U.S.C. § 1484(a); *see also* 19 C.F.R. § 141.0a (defining "entry" as the documentation required to be filed with Customs or the act of filing such documentation.).

The penalties assessed under § 1592(c)(2) and (c)(3) are for gross negligence or negligence in connection with such acts of "entry." Negligence is not defined separately in the statute. Accordingly, we must assume it carries its ordinary common law meaning when used in the Tariff Act. *See, e.g., Neder v. United States*, 527 U.S. 1, 21 (1999) ("It is a well-established rule of construction that where Congress uses terms that have accumulated settled

meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.") (citations omitted); *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary.") (citations omitted). That meaning implies a duty, the breach of that duty, and harm causally flowing from breach of that duty. *See Huffman v. Union Pacific R.R.*, 675 F.3d 412, 418 (5th Cir. 2012) ("negligence . . . requires proof of breach of a standard of care, causation, and damages.") (citing *Consolidated Railroad v. Gottshall*, 512 U.S. 532, 540 (1994)); *Zimmerman v. Norfolk Southern Corp.*, 706 F.3d 170, 189 (3d Cir. 2013) ("The well-worn elements of common-law negligence are . . . duty, breach, causation, and damages."); *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (identifying "the traditional common law elements of negligence: duty, breach, foreseeability, and causation."). The only "duties" regarding the filing of documents in connection with the entry of merchandise set forth in the Tariff Act which could give rise to a negligence claim are those spelled out in §§ 1484 and 1485. Section 1592(c)(2) and (c)(3) are thus inextricably tied to §§ 1484 and 1485.

The government recognized this interaction between §§ 1484 and 1485 and the penalties which can be assessed under § 1592 when filing its summary judgment motion at the Court of International Trade. *See United States v. Trek Leather, Inc. and Harish Shadadpuri*, No. 1:09-CV-00041-NT, Doc. 30 at 11. In its motion, under the section heading "[f]or [v]iolation [o]f 19 U.S.C. § 1592(a)," the government first sets out §§ 1484 and 1485, and related Customs regulations, to demonstrate the procedures and requirements importers must follow—i.e. their "duties"

under the Act—and documents that must be filed at the time of entry. *Id.* Only after setting forth these requirements does the government provide the details of § 1592 and the relevant levels of culpability and penalties which attach when an "entry" is fraudulent or negligently false. *Id.* at 11-12. When the government withdrew its fraud claims against both Trek and Shadadpuri, moreover, it obligated itself to prove the existence of and breach of a definable duty under the Act. Thus, the allegations in the government's complaint and the complete record in this case reveal that the government alleged that Trek and Shadadpuri were negligent in "making entry" of the men's suits under §§ 1484 and 1485—i.e., failed to use reasonable care in connection with its entry documentation—and should be liable for a penalty under § 1592(c)(2) or (c)(3) as a result.

Under the facts of this case, it is undisputed that *Trek* is the importer of record because it is the owner of the merchandise which was entered into the United States and as to which Customs assessed duties. The government does not contend that Shadadpuri was an "importer of record or customs broker." Nor does it assert that Shadadpuri had any independent duty under §§ 1484 and 1485 with respect to Trek's entries. It concedes that Trek is a corporation and that, even as its sole shareholder, Shadadpuri is not chargeable with its acts generally. The government cannot reasonably contend otherwise given long-standing principles of limited liability for shareholders and corporate officers when acting on behalf of a corporation. *See Anderson v. Abbott*, 321 U.S. 349, 361-62 (1944) ("[n]ormally the corporation is an insulator from liability on claims of creditors. The fact that incorporation was desired in order to obtain limited liability does not defeat that purpose."); *Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("[a] corporation and its stockholders are generally to be treated as separate entities."). Of course, Trek is chargeable with Shadadpuri's actions because he

is a corporate officer (i.e., he is an "agent" of the corporation in the common law sense of that term); the question posed is whether Shadadpuri, under the circumstances here, can be personally chargeable with negligence for the actions he took in his capacity as a corporate officer and on behalf of the corporation. Under basic principles of corporate law, he cannot. *See* O'Neal and Thompson's Close Corporations and LLCs: Law and Practice, § 8.22 (Rev. 3d ed.) (stating that when an officer of a corporation acts, his action is that of the entity).

In *Hitachi*, for instance, we found that because §§ 1484 and 1485 apply by their terms only to importers of record, the corporate parent of an importer could not be directly liable for violations thereof, even where it had played "an active role" in the importer's entry of merchandise. *Hitachi*, 172 F.3d at 1337-38. We held, moreover, that the corporate parent could not be liable for aiding and abetting the importer's violations of §§ 1484 and 1485 because one cannot, as a matter of legal theory, "aid and abet" the negligence of another. *Id.* Thus, it would seem that, absent a showing that pierces Trek's corporate veil, Shadadpuri is as much a third party to Trek's activities as an "importer of record" as was the corporate parent in *Hitachi* and, thus, cannot be directly chargeable with penalties under § 1592(c)(2) or (3) for Trek's negligence. As Shadadpuri concedes, he could be chargeable with a penalty under § 1592(a)(1)(B) for aiding and abetting corporate fraud had the government chosen to prove that Trek engaged in such fraud, but the government abandoned that claim. And, under *Hitachi*, aiding and abetting liability only applies to intentional acts, not negligent ones.

The government seeks to avoid the result that seems compelled by the structure of the Tariff Act and our decision in *Hitachi* by arguing that § 1592(a) defines "person[s]" subject to the penalties more broadly than §§ 1484 and 1485 define an "importer of record." And, the

government argues that *Hitachi* only addressed the liability of parent "exporters" under § 1592(a) and did not mean to apply its holding to other potential "person[s]" under § 1592(a). We are not persuaded on either score.

While the word "person" generally carries a broad connotation, it cannot be divorced from the remainder of the language in § 1592. The word "person" must be read in context and "'with a view to [its] place in the overall statutory scheme.'" *Roberts v. Sea-Land Servs., Inc.*, __ U.S. __, 132 S.Ct. 1350, 1357 (2012) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989)); *United States v. Morton*, 467 U.S. 822, 828 (1984) ("[w]e do not, however, construe statutory phrases in isolation; we read statutes as a whole."). As noted above, § 1592(a) does not simply prohibit persons from lying to customs—though there may be other civil or criminal provisions which address that activity—it *only* bars persons from making misstatements to Customs *in connection with* the entry of merchandise into the United States, and *only* from doing so in a way that might tend to affect Customs' assessment of duties on that merchandise. *See Thorson Chem. Corp.*, 795 F. Supp. at 1197-98. And, penalties under § 1592(c)(2) and (c)(3) for negligent conduct can only be assessed against those with definable "duties" under the Tariff Act relating to such entries. The word "person" in this context must be read to encompass those who are authorized to enter merchandise into the United States *and* who have duties imposed upon them which are concomitant with such entry. We do not read "person" as a disembodied term untethered to the conduct for which Congress deemed a penalty to be appropriate. Nor do we read into it an unstated purpose of Congress to repeal the common law principle of corporate-shareholder immuni-

ty.[2]  We also decline to parse *Hitachi* as finely as the government asks that we do.

In *Hitachi*, we rejected the government's argument that § 1592(c)(2) and (c)(3) should be read broadly to encompass entities or individuals who, though not importers of record, are actively involved with the funding and control of the entry of merchandise by that importer of record.  *Hitachi*, 172 F.3d at 1336-38.  The position the government takes here, though phrased differently, is to the same effect; if we accept it, we would simultaneously overrule the result in *Hitachi*.  We may not do that, nor do we wish to.  We did not limit either our discussion or holding in *Hitachi* to exporters; our focus was on the fact that, as a corporate parent, Hitachi Japan was not the importer of record and had no duties as such, despite findings by the Court of International Trade that it was actively involved with and even directed the activity.  As here, what we did in *Hitachi* was both respect the corporate form and recognize that a claim of negligence must be predicated upon a defensible legal duty; the government's effort to characterize our focus differently is unpersuasive.

The government had at least two separate avenues to hold Shadadpuri personally liable for penalties under § 1592 in connection with the duties owed for Trek's 2004 entries.  It could have proven that Trek committed fraud and that Shadadpuri aided and abetted that fraud.  Or, it could have pierced Trek's corporate veil and charged

---

[2]   We agree that the term "person" in § 1592(a) is broader than the term "importer of record."  Indeed, there is no doubt that a variety of "persons," including corporate officers, may be liable for aiding and abetting fraud by an importer of record, even though they are not themselves the designated importer, or may be liable for their own direct acts of fraud.

Shadadpuri with Trek's admitted negligence as Trek's alter ego. It is possible, moreover, that the government could have proven that Shadadpuri personally committed fraud and is liable for that conduct under § 1592(a).[3] While all of these routes seem viable—indeed readily available—on the record before us, the government has steadfastly eschewed them all.

Instead, the government has asked us to adopt a broad legal principle that would expose all corporate officers and shareholders to *personal* liability for *negligent* acts they undertake *on behalf of their corporation.* Absent an explicit statutory basis for doing so, we decline to believe Congress intended to supplant the common law so completely.[4] And, we decline to reverse or dilute our holding in *Hitachi.*

---

[3]    The dissent makes a factual argument that may well support a finding that Shadadpuri either committed a personal act of fraud or aided and abetted fraud by Trek. Dissent at 5–6. While we do not disagree with the facts described, they support legal theories the government expressly has chosen not to pursue. The government never sought to establish that either Shadadpuri or Trek committed fraud. While Shadadpuri's conduct was reprehensible, we cannot endorse creating legal shortcuts for the government to impose a penalty in *this* case because that would free the government to employ that same shortcut in all other cases. We do not want to fall into the trap of letting bad facts make bad law, and, thus, decline the invitation to do so.

[4]    When Congress intends to impose personal liability on corporate officers for conduct taken in their capacity as such, it says so expressly. *See, e.g.,* 18 U.S.C. § 1350 (fraud provisions of Sarbanes-Oxley Act). The dissent argues that corporate officers should be liable *personally* for the cost of penalties assessed under § 1592, even when

Thus, while we may not fully understand the strategy choices the government made here, we hold it to them and reverse the judgment of the Court of International Trade to the extent it imposed penalties under § 1592(c)(2) upon Shadadpuri while acting in his capacity as a corporate officer of Trek, a corporate "importer of record."[5]

---

acting in their capacity as officers, and even when their conduct was merely negligent. In support of this proposition, it cites to *United States v. Islip*, 18 F. Supp. 2d 1047, 1061 (Ct. Int'l Trade 1998), which, in turn, relies on *United States v. Appendagez, Inc.*, 560 F. Supp. 50 (Ct. Int'l Trade 1983), which relies on *Herm v. Stafford*, 466 F. Supp. 439 (W.D. Ky. 1979) and *United States v. Wise*, 370 U.S. 405 (1962). Those two cases do not address the circumstances at issue here, however. Those inapt cases have nothing to do with the liability of corporate officers accused of negligently filling out entry papers required of their corporation by §§ 1484 and 1485. Nothing in them supports the conclusion that Congress intended to put the personal assets of such corporate officers at risk based on negligent conduct that falls short of affirmative acts of fraud or the aiding and abetting of fraud. *Herm* is a securities fraud case from Kentucky that discusses a corporate officer's culpability when *knowingly participating* in a corporation's fraudulent acts. *Wise* is a case interpreting the criminal provisions of the Sherman Act; its holding rests on a careful assessment of the scope of that provision and the class of entities and individuals historically within its reach, including corporate officers who knowingly engage in the illegal acts proscribed. There are neither criminal nor fraud claims asserted against Shadadpuri in this action. And, the Tariff Act is fundamentally different from and shares no common history with the Sherman Act.

[5] To the extent the dissent is concerned with making sure that corporate officers be held "liable for false

**REVERSED**

COSTS

No costs.

---

statements made by a corporation if the officer knowingly participated in the deception or failed to correct the false statements upon learning of them" Dissent at 4, quoting *Islip*, 18 F. Supp. 2d at 1061, there is no doubt they can be. Section 1592(a)(1)(B) makes clear that is so; all the government must do is prove that the importer of record committed fraud through those officers and that the corporate officer "knowingly participated in that deception" or covered it up, i.e., aided and abetted it. It is possible, alternatively, that the government could prove direct acts of fraud and attempt to assess a penalty under § 1592(c)(1) therefore. What the government may not do is shortcut its burden of proof in a way that ignores both the statutory scheme of the Tariff Act and an importer of record's corporate form.

# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES,**
*Plaintiff-Appellee,*

**v.**

**TREK LEATHER, INC.,**
*Defendant,*

**AND**

**HARISH SHADADPURI,**
*Defendant-Appellant.*

---

2011-1527

---

Appeal from the United States Court of International Trade in No. 09-CV-0041, Judge Nicholas Tsoucalas.

---

DYK, *Circuit Judge*, dissenting.

The majority holds that only an importer of record or agent authorized in writing—as defined by 19 U.S.C. § 1484 of the customs statutes—may be liable for negligence as a "person" under § 1592(a)(1)(A). Absent piercing of the corporate veil, it holds that corporate officers (agents of the corporation) like Shadadpuri are not liable for negligently submitting false customs forms.

In my view, the majority's interpretation is inconsistent with the plain language of the statute and its legislative history. I respectfully dissent.

I

The majority suggests that § 1592 is designed solely to impose penalties for violations of §§ 1484 and 1485, arguing that "[t]he only 'duties' regarding . . . entry . . . are those spelled out in §§ 1484 and 1485," and that "Section 1592(c)(2) and (c)(3) are thus inextricably tied to §§ 1484 and 1485." Maj. Op. at 13. It argues that, since § 1484 only imposes duties on "importers of record" and "agents authorized by the [importer of record] in writing," those are the only persons who can be liable for penalties under § 1592. But § 1592 contains no reference to § 1484 and broadly sanctions any "person . . . [who] by fraud, gross negligence, or negligence . . . enter[s], introduce[s], or attempt[s] to enter or introduce any merchandise . . . by means of . . . any document . . . which is material and false, or . . . any omission which is material." 19 U.S.C. § 1592(a).

Alternatively, the majority urges that importers of record and written agents are the only persons who could make an "entry" within the meaning of § 1592. But this cannot be correct. Any importer of record typically acts through agents. The statutory scheme requires that an "entry" of merchandise is made by filing specific documents with the customs service. *See* 19 U.S.C. §§ 1484, 1485. Those who submit those documents have a duty to ensure that they are accurate. Section 1592(a)(1)(A) is designed to impose liability on agents of importers of record who breach this duty in submitting the required documents for entries on behalf of the importer of record.

This is clear from the history of § 1592(a)(1)—not discussed or even acknowledged by the majority. The current language of the statute, which refers to a "person," was adopted in 1978. *See* Customs Procedural Reform and

Simplification Act of 1978, Pub. L. No. 95-410, § 110, 92 Stat. 888, 893-94. The Supreme Court has made clear that "'person' often has a broad[] meaning in the law." *See Clinton v. City of New York*, 524 U.S. 417, 428 n.13 (1998) (citing 1 U.S.C. § 1). The history of § 1592(a) shows that the term "person" has such a broad meaning in *that* statute. The precursor to § 1592(a)(1)(A) imposed liability for false statements to Customs on a wide range of individuals, including corporate representatives like Shadadpuri. Specifically, the prior version of the statute conferred liability on

> any *consignor, seller, owner, importer, consignee, agent, or other person or persons* [who] enters or introduces, or attempts to enter or introduce . . . any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal . . . .

19 U.S.C. § 1592 (1976) (emphasis added). Shadadpuri would clearly be liable under this earlier statute. As the majority concedes, Shadadpuri qualifies as an agent of Trek. *See* Maj. Op. at 15 (conceding that Shadadpuri "is an 'agent' of the corporation in the common law sense of that term"). And Shadadpuri clearly provided false information to Customs that omitted the value of certain fabric assists.

The question is whether the change in the statute's language—using the word "person" in the current version of § 1592(a) to replace the list of covered persons in the predecessor statute—changed the meaning of the statute. It is quite clear that the substitution of the word "person" for the list appearing in the predecessor statute was not designed to make a substantive change. The legislative history stated explicitly that "[t]he persons covered . . . [we]re intended to remain the same as they [we]re under [the previous] law," and "emphasize[d] that . . . the com-

mittee d[id] not change the scope of [the existing law] with respect to the persons potentially liable" under the provision. S. Rep. No. 95-778, at 18, 20 (1978); *see also* H.R. Rep. No. 95-1517, at 10 (1978) (Conf. Rep.) (noting that "the persons covered . . . [we]re intended to remain the same").

Shortly after the current version of § 1592(a) was adopted, the Court of International Trade ("Trade Court"), explained that, in changing the language of the statute, the new version placed "[n]o limitation . . . on whether such persons were corporations or natural persons," and it concluded that

> there is nothing in the Act []or its legislative his-
> tory to indicate that the Congress intended to re-
> strict the applicability of the penalties [in § 1592]
> to corporations and to exclude from the applicabil-
> ity of the penalties officers of corporations merely
> because of a claim that they were acting in their
> corporate capacities.

*United States v. Appendagez, Inc.*, 560 F. Supp. 50, 55 (Ct. Int'l Trade 1983). More recently, the Trade Court has stated that "[a] corporate officer may be liable for false statements made by a corporation if the officer knowingly participated in the deception or failed to correct the false statements upon learning of them." *United States v. Islip*, 18 F. Supp. 2d 1047, 1061 (Ct. Int'l Trade 1998) (altera-tion in original) (quotation marks omitted). Unsurprising-ly, then, the Trade Court has noted that "[t]he language of section 1592 leaves room for those other than the import-er of record to be held accountable for violations," and that it has "consistently allowed corporate officers to be held [jointly and severally] liable for violations that were committed in the capacity of their employment," as was the case for Shadadpuri below. *United States v. Matthews*, 533 F. Supp. 2d 1307, 1313-14 (Ct. Int'l Trade 2007).

## II

The majority seems to distinguish these Trade Court cases as involving fraud rather than negligence. *See* Maj. Op. at 18 n.4, 19 n.5. But the same language in § 1592(a) (referring to liability of "persons") applies to both fraud and negligence. *See* 19 U.S.C. § 1592(c) (defining liability under § 1592(a) for fraud, gross negligence, and negligence). There is nothing in the statutory text that would distinguish between an agent's direct liability for fraudulent entries and negligent ones. The majority's effort to suggest that the statutory text might cover fraud and not negligence is misguided. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005) (rejecting "the dangerous principle that judges can give the same statutory text different meanings in different cases").[1]

The construction of § 1592 mandated by the legislative history is not contrary to our decision in *Hitachi*, which did not address the question of whether a "person" other than an importer of record could be liable for material false statements or omissions under § 1592(a)(1)(A), which is at issue here. It merely held that Hitachi Japan, which was not the importer of record in that case, could not be liable for aiding and abetting negligent false statements made to Customs by the importer of record under 19 U.S.C. § 1592(a)(1)(B). 172 F.3d at 1336. The government did not argue and the case did not decide whether an agent or other individual could be a "person" liable for negligence.

## III

Here, the record clearly showed that Shadadpuri signed the required entry documentation on Trek's behalf,

---

[1]    To be sure under *United States v. Hitachi America, Ltd.*, 172 F.3d 1319 (Fed. Cir. 1999), an individual could aid and abet a fraud, but not a negligent act.

Supp. J.A. 31-32, 79-88, and Shadadpuri conceded at oral argument in the Trade Court that he "had the responsibility and obligation to examine all appropriate documents including all assists within the [required] entry documentation." *United States v. Trek Leather*, No. 09-00041, slip op. at 9 (Ct. Int'l Trade June 15, 2011). But the documentation Shadadpuri authorized had material omissions and therefore contained false representations. Because Shadadpuri had been responsible for the submission of similarly false entries in the past, the Trade Court reasonably deemed Shadadpuri's actions negligent, rendering him individually liable for his actions. This holding was consistent with the statute.

The Trade Court's interpretation of the statute is correct. The majority's interpretation is demonstrably incorrect. I respectfully dissent.