### UNITED STATES v. ONE TRUNK.

(District Court, S. D. New York. · July 19, 1909.)

**1. CUSTOMS DUTIES (§ 67*)—PASSENGER'S BAGGAGE—"TRUNK."**

Though a passenger's baggage declaration specified only a "trunk," without any mention of its contents, it sufficiently complied with section 2802, Rev. St. (U. S. Comp. St. 1901, p. 1873), requiring that, if such baggage contains any dutiable article, it shall be "mentioned." The specification of the "trunk" was equivalent to mention of its contents.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 8, p. 7116.]

**2. CUSTOMS DUTIES (§ 125*)—"ENTRY"—WHEN ENTRY BEGINS.**

While it is a condition to the entry of merchandise that invoices should be carried before an American consul, this is not necessarily a part of the entry within the meaning of Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), relating to illegal "entry." At the earliest entry does not begin until the owner, after the goods reach this country, begins that series of acts through which, by application to the customs officials, he gains possession of the goods.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 125.*

For other definitions, see Words and Phrases, vol. 3, p. 2408.]

**3. CUSTOMS DUTIES (§ 125*)—"ATTEMPT TO MAKE ENTRY"—ABANDONMENT OF ILLEGAL INTENT.** ·

An importer swore to a false invoice value before an American consul, but on importation presented at the custom house an invoice to which had been added a sum sufficient to make the true value. *Held*, that the case was not within Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), relating to any "attempt to make any entry of imported merchandise by means of any fraudulent or false invoice." The illegal intent was abandoned before any "attempt" was made to make entry of the goods.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 125.*]

In Rem. Proceedings for forfeiture of imported goods.

These proceedings were brought under section 2802, Rev. St. (U. S. Comp. St. 1901, p. 1873), and Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), the pertinent portions of which read as follows:

"Sec. 2802. . Whenever any article subject to duty is found in the baggage of any person arriving within the United States, which was not. at the time of making entry for such baggage, mentioned to the collector before whom such entry was made, by the person making entry, such article shall be forfeited,

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the person in whose baggage it is found shall be liable to a penalty of treble the value of such article."

"Sec. 9. That if any owner, importer, consignee, agent or other person shall make or attempt to make any entry of imported merchandise by means of any false or fraudulent invoice, * * * such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited."

At the trial of the case counsel stipulated the facts to be as follows:

The claimant in this case, Mrs. Anna McNally, is and has been for many years in business as a dressmaker in New York City. During the latter part of February or the early part of March, 1908, she purchased in Paris from Goupy, Perdoux, Agnès, Jeanne Hallé, and Cornè, Parisian dressmakers and makers of dress models, some 33 dresses (3 white cotton gowns, and 10 blouses), all of which were for use as models. On the 3d day of March, 1908, she presented to the deputy consul general at Paris, France, a detailed invoice in triplicate of these purchases, which she valued therein at 10,246 francs. She signed the declaration on the blank form, attached to each of the three copies of the invoice, in which she declared, among other things, that the invoice annexed thereto was in all respects correct and true, and contained a correct statement of the actual cost of the merchandise—i. e., the actual price paid therefor—and that she intended to enter the merchandise at the port of New York. This invoice in triplicate was certified by the deputy consul general on March 3, 1908. Its serial number is 4,850. The first original of this invoice is presumably on file as required by law, in Paris. The triplicate original was mailed by the deputy consul general direct to the collector of the port of New York, and received at the custom house on March 11, 1908. It is marked and admitted in evidence as "Exhibit A." The duplicate original of this invoice was delivered by the deputy consul general to Mrs. McNally on March 3, 1908. Mrs. McNally thereupon embarked from France for New York on the Kronprinzessin Cecilie, with the trunk containing the dresses and with the duplicate invoice, arriving at New York on March 10, 1908. On arrival she made declaration of baggage on the usual blank form, declaring that one trunk, upon which she did not declare any value, was to be sent to public stores. This declaration, signed by her, is marked and admitted in evidence as "Exhibit B." This trunk, containing the dresses, etc., previously mentioned, was sent to public stores, where it stayed until examined, appraised, seized, and then released to Mrs. McNally under bond filed by her, under Rev. St. U. S. § 938 (U. S. Comp. St. 1901, p. 690), for the amount of the goods, conditioned upon the termination of this suit favorably to her.

On March 12, 1908, Mrs. McNally, by her brokers, Hirschbach & Smith, filed at the custom house her written entry of the dresses contained in this one trunk, which she valued at 10,246 francs (the value declared before the consul to be correct), plus 10,236.60 francs, which sum she added "to make market value," making a total valuation of 20,482.60 francs, which is approximately the amount originally paid by Mrs. McNally for the goods in Paris. The serial number of this written entry is 58,336. It is marked and admitted in evidence as "Exhibit C." At the same time with the written entry Mrs. McNally, by her brokers, Hirschbach & Smith, filed at the custom house as required by law the duplicate invoice. On this duplicate invoice Mrs. McNally had made additions to the various items as declared before the consul to the amount of 10,236.60 francs, which, added to the original invoice value, made the sum of 20,482.60 francs, the value stated in the written entry. This duplicate invoice, with additions as aforesaid, is marked and admitted in evidence as "Exhibit D." The triplicate invoice (Exhibit A) received from the deputy consul general has never been in any manner changed. The goods were subsequently examined and appraised at the sum of 20,482.60 francs, the value declared by Mrs. McNally in the written entry. They were thereupon seized and released under bond as already mentioned.

This suit is against the bond as for a forfeiture of seized goods in the possession of the government. The foreign value of the goods is $3,953.14; duty $2,370.63; home value $6,323.77.

William L. Wemple and Harold S. Deming, Asst. U. S. Attys.
W. Wickham Smith, for claimant.

HAND, District Judge. In this case the trunk must be regarded from two points of view: First, as passenger's baggage; second, as imported merchandise. As passenger's baggage, the question comes up, under section 2802 of the Revised Statutes (U. S. Comp. St. 1901, p. 1873), whether the claimant "mentioned to the collector before whom such entry was made any article subject to duty * * * found in" her "baggage." The government claims that because she did not make a complete description of the trunks, as required by section 2799, the goods were forfeited under section 2802. There is no ground for such contention. United States v. One Pearl Chain, 139 Fed. 513, 71 C. C. A. 500. Her declaration was as though she had said:

"I have here certain goods in a trunk, which I am going to send for your examination to the stores."

I can see nothing in the government's position, except that to mention the trunk was not to mention any dutiable article. If this means that "trunk" is not the equivalent of "personal effects in a trunk," it is too trivial for notice. If it means that "personal effects" is not mention enough of "gowns," it is met by United States v. One Pearl Chain, supra, in which a pearl necklace was "mentioned" by the term "wearing apparel." I must certainly look at the substance, not the letter, of the statute; and it is perfectly clear that every possible purpose of the section is answered by this declaration. The case is much weaker for the government than United States v. One Pearl Chain.

The second consideration is whether, as merchandise, the trunk is forfeited because Mrs. McNally "attempted to enter" it. As I understand it, one "attempts" a crime where, with an intent to complete the crime, he does any part of the acts which together constitute the complete crime. I do not understand that anything which leads up to, but does not itself constitute a part of, a crime, can alone constitute an attempt to do it. It is often a matter of some casuistry as to just where the series of acts actually begins which, when completed, would constitute a crime; for by no means all those things which are necessary conditions to the commission of crime are a part of the crime itself. In this case it is no doubt a necessary condition to the entry of the goods that Mrs. McNally should take out the invoices in Paris and send one to the customs house, because that was a condition of entry; but it was not, on that account, necessarily a part of the entry. In my judgment the entry does not begin, at the earliest, until the owner, after the goods reached this country, begins that series of acts through which, by application to the customs officials, he gains possession of his goods. If this is so, the claimant changed her intent before she performed any of the series of acts which, when completed, would have constituted such entry; and so she made no attempt.

It is, perhaps, not necessary to determine with strictness just how much the term "entry" includes. All that is necessary in this case is to show that the taking out of the fraudulent invoice in Paris is not part of the entry. I am satisfied that, in the sense that the statutes use it, the entry does not begin so early as that. Besides, I consider

the case controlled by United States v. Riddle, 5 Cranch, 311, 3 L. Ed. 110, and United States v. 28 Packages of Pins, Gilp. 306, 28 Fed. Cas. 244.

I direct a verdict for the claimant.