# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES,**
*Plaintiff-Appellee,*

v.

**TREK LEATHER, INC.,**
*Defendant,*

AND

**HARISH SHADADPURI,**
*Defendant-Appellant.*

---

2011-1527

---

Appeal from the United States Court of International Trade in No. 09-CV-0041, Senior Judge Nicholas Tsoucalas.

---

Decided: September 16, 2014

---

STEPHEN C. TOSINI, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for plaintiff-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

JOHN J. GALVIN, Galvin & Mlawski, of New York, New York, argued for defendant-appellant.

———————————

Before PROST, *Chief Judge,* NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, and CHEN, *Circuit Judges.**

Opinion for the court filed by *Circuit Judge* TARANTO.

TARANTO, *Circuit Judge.*

Harish Shadadpuri transferred ownership of merchandise, while it was in transit to the United States, to a company he chose to be the importer of record for its entry into United States commerce. He also furnished to the hired customs broker, for use in completing and submitting the entry documents required for clearance through the Bureau of Customs and Border Protection (CBP), commercial invoices that materially understated the value of the merchandise, thereby reducing the calculated customs duties. We hold that, by those actions, Mr. Shadadpuri "introduced" the merchandise into United States commerce by means of the undervaluation within the meaning of 19 U.S.C. § 1592(a)(1)(A). Because it is undisputed that he was grossly negligent in his actions, Mr. Shadadpuri violated section 1592(a)(1)(A). We affirm

———————————

* Sharon Prost assumed the position of Chief Judge on May 31, 2014. Pursuant to statute, Circuit Judge Plager, who was a member of the original panel in this case, elected not to participate in the decision of the en banc court. Circuit Judge Hughes did not participate in the consideration or decision of this case. Randall R. Rader, who was Chief Judge when en banc review was granted, retired from the position of Circuit Judge on June 30, 2014, and did not participate in this decision.

the judgment of the Court of International Trade holding him liable.

## BACKGROUND

Section 1592(a)(1) of Title 19, U.S. Code, provides:

(1) General rule

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

(B) may aid or abet any other person to violate subparagraph (A).

19 U.S.C. § 1592(a)(1). That provision was the same in 2004, when the merchandise at issue here was imported. Section 1592 goes on, among other things, to specify procedures for enforcement of the quoted prohibitions and to provide penalties for violations, the authorized penalties depending on whether a violation involves fraud, gross negligence, or negligence. *Id.* § 1592(b), (c).

## A

This case began in 2009, when the government filed a complaint in the Court of International Trade, invoking that court's jurisdiction under 28 U.S.C. § 1582 and alleging a violation of section 1592(a)(1). The complaint names Trek Leather, Inc., and Mr. Shadadpuri as defend-

ants, alleging that Mr. Shadadpuri was Trek's president, and directed its business, at the time at issue. It charges that, between February 2, 2004, and October 8, 2004, the two defendants "entered or introduced or attempted to enter or introduce men's suits into the commerce of the United States" by means of "false acts, statements and/or omissions" that "understated the dutiable value of the imported merchandise" for the 72 itemized entries, resulting in an underpayment of $133,605.08 in duties. Complaint, *United States v. Trek Leather, Inc.*, Case No. 1:09-cv-00041-NT (Ct. Int'l Trade Jan. 28, 2009), at 1–2. According to the complaint, CBP had issued a penalty notice, and some of the properly calculated duties, and all of the penalties CBP sought to impose, remained unpaid. *Id.* at 2–3. The complaint includes separate counts alleging fraud, gross negligence, and negligence, and it seeks to recover penalties, unpaid duties, and interest. *Id.* at 3–5.

In late 2010, after discovery took place, the government filed a motion for summary judgment of liability. The defendants opposed the motion; they also moved to dismiss the fraud count and argued that Mr. Shadadpuri personally could not be liable without fraud. The filings and accompanying evidence establish the following facts beyond genuine dispute. We rely mainly on the government's statement of uncontested facts ("Gov't Facts") and the defendants' response, which admits most of the government's stated facts ("Def. Facts").

Trek "is the importer of record for men's suits reflected in the 72 entry lines at issue in this case," and Mr. Shadadpuri is the president and sole shareholder of Trek, whose activities he directed from January 2003 to December 2004. Gov't Facts at 1, 6.[1] From February 2, 2004, to

---

[1]    19 U.S.C. § 1484, titled "Entry of merchandise," defines "importer of record." Paragraph (a)(1) states that

October 8, 2004, "Mr. Shadadpuri imported men's suits through one or more of his companies, including Trek." *Id.* at 1. "Mr. Shadadpuri, through Trek and/or one of his other companies, provided" fabric to the manufacturer of the suits at issue free of charge or at reduced cost. *Id.*; *see id.* at 6. The statute labels such a subsidized component an "assist."[2]

---

"one of the parties qualifying as 'importer of record' under paragraph (2)(B), either in person or by an agent authorized by the party in writing, shall, using reasonable care—(A) make entry therefor by filing with [CBP]" documentation or information needed for CBP "to determine whether the merchandise may be released from custody of [CBP]; (B) complete the entry . . . by filing with [CBP] the declared value, classification and rate of duty applicable to the merchandise, and such other documentation or . . . information as is necessary to enable [CBP] to—(i) properly assess duties on the merchandise . . . ." *Id.* § 1484(a)(1). Paragraph (2)(B) requires that the documentation be filed "either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under" 19 U.S.C. § 1641, *i.e.*, a customs broker, and adds: "For the purposes of this chapter, the importer of record must be one of the parties who is eligible to file the documentation or information required by this section." *Id.* § 1484(a)(2)(B).

[2]    The statute defines an "assist" to include materials incorporated into the ultimately imported merchandise "if supplied directly or indirectly, and free of charge or at reduced cost, by the buyer of imported merchandise for use in connection with the production or the sale for export to the United States of the merchandise." 19 U.S.C. § 1401a(h)(1). *See also* 19 C.F.R. § 152.102(a).

By providing the manufacturer free or subsidized components, like the "fabric assists" here, an importer reduces the manufacturer's costs, and the manufacturer may then reduce the price it charges for the merchandise once manufactured. A suit maker, if it obtains its fabric for free, might shave $100 off the price it charges for a suit. In this case, "[t]he material assists . . . were not part of the price actually paid or payable to the foreign manufacturers of the imported apparel." Def. Facts at 2. In such circumstances, the manufacturer's invoice price understates the actual value of the merchandise, and if the artificially low invoice price is used as the merchandise's value when calculating customs duties based on value, disregarding assists results in understating the duties owed. To address such an artificial reduction of customs duties, the statute and regulations expressly require that the value of an "assist" be incorporated in specified circumstances into the calculated value of imported merchandise used for determining the duties owed. 19 U.S.C. § 1401a(a)(1), (b)(1), (e)(1); 19 C.F.R. §§ 152.101(b)(1), 152.103(a), (b), (d); *see generally* 19 U.S.C. §§ 1401a (value), 1500 (appraisal), 1503 (dutiable value).

Initially, all of the 72 shipments at issue here "were invoiced and shipped to non-party Mercantile Electronics, LLC," of which Mr. Shadadpuri was president and 40% shareholder. Gov't Facts at 1. But "[w]hile the subject men's suits were in-transit, Mr. Shadadpuri caused the shipments of the imported merchandise to be transferred from Mercantile Electronics to Trek." *Id.* at 1–2. Mr. Shadadpuri did so after receiving the manufacturer's invoice and deciding "which of his various companies had the funds to pay for the shipment." *Id.* at 4; Def. Facts at 3. "Once he determined that the shipments of the men's suits at issue here would be imported by Trek, he contacted his broker, non-party Vandegrift Forwarding Compa-

ny, Inc. ('Vandegrift'), and directed that the merchandise be transferred while in transit." Gov't Facts at 4.

"The dutiable value of the men's suits imported by Trek and Mr. Shadadpuri did not include the value of the fabric assists." *Id.* at 2; *see id.* at 6. It is undisputed that the omission of that value violated statutory and regulatory obligations to state a proper value when filing the "entry" documentation required "to secure the release of imported merchandise from [CBP] custody." 19 C.F.R. § 141.0a (defining "entry").[3] Moreover, Mr. Shadadpuri has acknowledged that "[p]rior to importing the men's suits at issue in this case, [he] knew that fabric assists must be included on the import documentation." Def. Facts at 2; *see* Gov't Facts at 6. Mr. Shadadpuri had been so informed by CBP (actually, by its predecessor, the U.S. Customs Service) during an investigation of similar undervalued importations in 2002. Gov't Facts at 2–3.

---

[3] While leaving many details to agency specification, the statute imposes requirements regarding the submission of invoices, 19 U.S.C. § 1481; entry documents or information addressing value, among other facts, *id.* § 1484 (quoted *supra* n.1); and accompanying declarations, *id.* § 1485. Regulations require all imported merchandise to be "entered" unless a specific exception exists, 19 C.F.R. § 141.4(a); define "entry" as certain documentation or its filing, *id.* § 141.0a; specify that CBP Form 7501, an "entry summary" containing value information, when accompanied by commercial invoices and other documents, satisfies the filing requirement, *id.* §§ 141.61, 142.3, 142.11; and impose requirements for filing invoices and/or related documentation showing "[t]he values or approximate values of the merchandise," *id.* § 142.6(a)(3); *see, e.g.*, *id.* §§ 141.81, 141.83, 141.86, 141.88, 141.90. *See generally* CBP, *What Every Member of the Trade Community Should Know About: Entry* (2004).

The CBP Form 7501 "entry summary" forms used for entry in this case list Trek as the importer of record, and they were prepared and submitted to CBP by Vandegrift, the customs broker "hired by Harish Shadadpuri," and signed by a Vandegrift representative. *See* Decl. of Michael Toole (Vandegrift vice president), Gov't Summ. Jdgt. App. ("SJ App.") A155; SJ App. A314–78 (corrected 7501s); Def. Summ. Jdgt. App. at CBP1203–2197 (including selected original and corrected 7501s). Vandegrift prepared the submissions based on papers he received from Mr. Shadadpuri and his aides. When the suit manufacturer was ready to ship completed suits, it sent Mr. Shadadpuri an invoice (SJ App. A419–20), and he and his aides sent it to Vandegrift: "I would fax, or my person who would help me would send a fax to the broker and the broker would file the entry." SJ App. A409 (Shadadpuri testimony). *See also* Def. Facts at 3 ("Upon receipt of a manufacturer's invoice, bill of lading and related importation documentation, Mr. Shadadpuri or one of Trek's employees or [the domestic suit seller] or one of its employees would fax a copy to Trek's customhouse broker for the preparation and filing of the required entry."); SJ App. A422–23 ("[W]hen we cut the invoice, we, and the people will send the fax to the broker.").

The "majority of invoices" sent to Vandegrift "did not contain any values or information reflecting the fact that fabric assists had been provided." Gov't Facts at 4; Def. Facts at 3; *see* SJ App. A166–240 (invoices).[4] When CBP began investigating, "Vandegrift determined that the majority of invoices and other information that had been

---

[4]   The information sent to Vandegrift included the suit maker's "Multiple Country Declarations" identifying work performed, but those declarations contain no price or other value information. *See, e.g.*, Def. Summ. Jdgt. App. at CBP1209, CBP1216, CBP1222.

provided by Mr. Shadadpuri did not disclose that any fabric assist had been provided." Gov't Facts at 4. Mr. Shadadpuri then "obtained new invoices from the manufacturer that revealed the fact that a fabric assist was provided, and the amount of the fabric assist." *Id.* Using the new invoices, Vandegrift prepared and submitted to CBP corrected entry documents showing the amount of duties actually due. *Id.* at 5; SJ App. A314–78. CBP calculated that the initial undervaluation had caused a $133,605.08 underpayment of duties—of which Trek and its surety paid $88,359.69 between 2005 and 2008, leaving $45,245.39 unpaid. Gov't Facts at 5, 6.

B

The government sought summary judgment of liability, of both defendants, for fraud, for gross negligence, and for negligence. The government recited the elements of its liability argument with some generality, including that "Trek and Mr. Shadadpuri entered, introduced, or attempted to enter or introduce merchandise into the United States" by the proscribed means, Gov't Summ. Jdgt. Mot. at 12 (Nov. 1, 2010), and that "Mr. Shadadpuri is a 'person' subject to liability under section 1592," *id.* at 14. Although the government, in its motion, several times invoked the "enter" language of section 1592(a)(1)(A) without separately mentioning the "introduce" language, *e.g.*, *id.* at 9, 11, 15, it also stated its argument more generally, and the parties' dispute never focused on the different terms in subparagraph (A). The government's motion focused on establishing the different degrees of culpability required for fraud, gross negligence, and negligence, which carry different maximum penalties. *Id.* at 17–24, 24–25, 26–28.

In their short response, defendants did not dispute Trek's liability for negligence or gross negligence. They argued, however, that the charge of fraud should be dismissed because the evidence showed no intent on the

part of Trek or Mr. Shadadpuri that the entry documentation to be prepared by the customs broker would omit the value of the assists. Def. Mem. in Opp. to Summ. Jdgt. and in Support of Partial Dismissal at 4–6 (Dec. 17, 2010). Defendants then asserted that, where there was no fraud, Mr. Shadadpuri could not be liable "for negligent or grossly negligent aiding or abetting." *Id.* at 6–7. They relied on *United States v. Hitachi America, Ltd.*, 172 F.3d 1319, 1336–38 (Fed. Cir. 1999), in which this court held that liability for aiding or abetting under subparagraph (B) of section 1592(a)(1) requires that a person have certain knowledge regarding the unlawfulness under subparagraph (A) of the action being aided or abetted—a ruling not dependent on whether the underlying violation involves fraud, gross negligence, or negligence. Defendants did not separately argue that Mr. Shadadpuri could not be liable directly for violating subparagraph (A).

In response, the government noted all of the facts that defendants left undisputed, Gov't Reply at 1–3 (Jan. 21, 2011), and it argued that it had proved fraud, *id.* at 4–6. It then argued that Mr. Shadadpuri had sufficient knowledge that he could be liable for aiding or abetting Trek's violations of subparagraph (A), even if Trek did not act fraudulently. *Id.* at 6–12. In reply, defendants reprised their argument against any possible finding of fraud. Def. Reply at 1–7 (Feb. 18, 2011). With respect to Mr. Shadadpuri, they asserted, for the first time, that no person other than an importer of record may be liable under subparagraph (A). Def. Reply at 8–9.

## C

The Court of International Trade granted the government's motion for summary judgment of liability of both defendants for gross negligence, denied the motion regarding fraud and negligence as moot, and denied defendants' motion to dismiss. *United States v. Trek Leather, Inc.*, 781 F. Supp. 2d 1306, 1309 (Ct. Int'l Trade

2011). The court began by concluding that the charge of fraud presented a disputed fact question. *Id.* at 1310. It then concluded that Trek conceded gross negligence; that "[a]ny 'person' who engages in the behavior prohibited by 19 U.S.C. § 1592(a) is liable thereunder regardless of whether that 'person' is the importer of record or not"; that "it was Mr. Shadadpuri who had the responsibility and obligation to examine all appropriate documents including all assists within the entry documentation and to forward these assists to his customs broker"; and so "Trek's gross negligence . . . could not have been conceded but for the direct involvement of Mr. Shadadpuri." 781 F. Supp. 2d at 1311–12. For those reasons, the court held both defendants liable for gross negligence, citing section 1592(a) generally; it did not state its holding as resting specifically even on paragraph (1) of section 1592(a), let alone distinguish subparagraph (A) from (B). The court entered a final judgment imposing liability for $45,245.39 in unpaid duties and $534,420.32 in penalties, plus interest. 781 F. Supp. 2d at 1312–13.

D

Mr. Shadadpuri alone appealed to this court, which has jurisdiction under 28 U.S.C. § 1295(a)(5). The government initially cross-appealed the dismissal of its fraud charge as moot, but it dropped the cross-appeal. In this court, the government has defended the Court of International Trade's judgment only on the basis of subparagraph (A) of section 1592(a)(1); subparagraph (B)'s proscription of aiding or abetting is therefore out of the case. With respect to subparagraph (A), Mr. Shadadpuri's contention on appeal is that liability under that provision is limited to importers of record in the absence of fraud.

A divided panel of this court reversed the Court of International Trade's judgment. *United States v. Trek Leather, Inc.,* 724 F.3d 1330 (Fed. Cir. 2013) (later vacated, as noted *infra*). The government did not press a claim

for aiding-or-abetting liability, seek to pierce the corporate veil separating Trek and Mr. Shadadpuri, or make a separate "introduce" argument in its brief defending the judgment on review. Reflecting those choices, the majority focused on the term "enter" in section 1592(a)(1)(A) and concluded that Mr. Shadadpuri could not be liable for ordinary or gross negligence in violation of that provision. It reasoned that, not being the importer of record or an agent designated in writing, Mr. Shadadpuri was not subject to and did not violate a duty imposed on those making entry under 19 U.S.C. §§ 1484, 1485. *Trek Leather*, 724 F.3d at 1331, 1335–40. Judge Dyk dissented, reasoning that, even in the absence of fraud, subparagraph (A)'s coverage is not limited to importers of record or obligations defined by 19 U.S.C. §§ 1484, 1485. 724 F.3d at 1340–43.

On the government's request for rehearing, this court vacated the panel decision and granted en banc rehearing of the appeal under Fed. R. App. P. 35. *United States v. Trek Leather, Inc.*, 2014 WL 843527 (Fed. Cir. Mar. 5, 2014). We review the Court of International Trade's grant of summary judgment de novo. *See, e.g.*, *NEC Solutions (Am.), Inc. v. United States*, 411 F.3d 1340, 1344 (Fed. Cir. 2005). Statutory interpretation is a question of law, and the grant of summary judgment is proper if the facts not genuinely disputed on the summary-judgment record establish liability under the proper statutory interpretation, *i.e.*, no factual dispute exists that is material to the outcome. *Id.*

## DISCUSSION

The issues for decision may be clarified by noting what issues are not before us. We are not faced with any issue about aiding-or-abetting liability under subparagraph (B) of section 1592(a)(1); the government relied only on subparagraph (A) in defending liability here. We are presented no issue about whether Mr. Shadadpuri was

grossly negligent or whether, if he attempted to or did enter or introduce the merchandise at issue, he did so by means of false material statements or material omissions. Nor do we have any challenge to the amount of the penalty if there is a violation of subparagraph (A).

The only questions presented for decision are whether Mr. Shadadpuri is a "person" covered by section 1592(a)(1)(A) and whether his actions come within the "enter, introduce, or attempt to enter or introduce" language of that provision. On these issues, moreover, Mr. Shadadpuri frames his arguments in all-or-nothing terms: he treats all of the imports of suits identically. Aside from the threshold "person" issue, therefore, the question before us is simply whether he engaged in any conduct respecting any of the suit shipments that constitutes entering, introducing, or attempting to enter or introduce merchandise into United States commerce under section 1592(a)(1)(A). We conclude that he did.

A

The threshold issue is straightforward. Mr. Shadadpuri is indisputably a "person," and section 1592(a)(1)—including both of its subparagraphs, (A) and (B)—applies by its terms to any "person." There is simply no basis for giving an artificially limited meaning to this most encompassing of terms, which plainly covers a human being. *See, e.g.*, 1 U.S.C. § 1; 19 U.S.C. § 1401(d) (confirming that the term "includes" partnerships, associations, and corporations; no exclusion of individuals).

The origins of the current statutory language confirm, rather than undermine, the plain broad meaning of "person." More than a hundred years ago, in *United States v. Mescall*, 215 U.S. 26 (1909), the Supreme Court rejected a district court's holding that a predecessor of section 1592, even apart from its conduct-proscribing terms, was limited in its reach to a particular subset of persons, namely, those who make entries. The Court held

that the statutory language—which covered an "owner, importer, consignee, agent, *or other person*," Act of June 10, 1890, § 9, 26 Stat. 131, 135–36 (emphasis added), quoted at 215 U.S. at 26—applied to persons other than the listed owners, importers, consignees, or agents. 215 U.S. at 32. The Court rejected the argument that, under the principle of *ejusdem generis*, the general term "person" should be narrowed based on the terms that preceded it in the provision. *Id.* at 31–32.

In 1976, section 1592, like its predecessor at issue in *Mescall*, listed certain persons (expanded to "consignor, seller, owner, importer, consignee, agent") and ended with general terminology, "or other person or persons." 19 U.S.C. § 1592 (1976). Congress extensively revised section 1592 in 1978, and as part of that revision, it replaced the listing with, simply, the general term, "person." *Id.* § 1592(a)(1). That simplification certainly does not suggest a narrowing; if anything, by removing the textual basis for an *ejusdem generis* argument, it would have suggested a broadening, if any broadening had remained possible after *Mescall*. And the relevant congressional committees stated that they intended no narrowing. *See* H.R. Conf. Rep. 95-1517, at 10 (1978); S. Rep. No. 95-778, at 17, 18, 20 (1978). There is, in short, no basis for giving "person" in section 1592(a)(1) less than its ordinary broad meaning.

Mr. Shadadpuri argues that certain language in *Hitachi*, 172 F.3d at 1336, supports a narrow meaning of "person" in section 1592(a)(1)(A), limited to an importer of record. But *Hitachi* did not interpret "person," and what it said in passing in the cited passage about subparagraph (A) cannot bind this court sitting en banc and, indeed, was dictum. In *Hitachi*, the relevant claim (against Hitachi Japan) was only under subparagraph (B), for aiding or abetting, not under subparagraph (A); and the claim was rejected for lack of the knowledge required by subparagraph (B). 172 F.3d at 1336–38. *Hitachi* involved no

attempt to apply subparagraph (A) to a person who was not an importer of record.  Mr. Shadadpuri also cites *United States v. Inn Foods Inc.*, 560 F.3d 1338, 1346 (Fed. Cir. 2009), but even the cited language says only that sections 1484 and 1485 are restricted to importers of record, not that section 1592(a)(1)(A) is; and *Inn Foods*, like *Hitachi*, involved no claim that subparagraph (A) applies to a person other than an importer of record.  In any event, we see no basis for departing from the plain meaning of "person" for section 1592(a)(1).[5]

Recognizing that a defendant is a "person," of course, is only the first step in determining liability for a violation of either of the subparagraphs.  What is critical is the defendant's conduct.  The two subparagraphs of section 1592(a)(1) proscribe certain acts and omissions.  Deciding whether a defendant is liable requires applying each subparagraph's language specifying the proscribed actions or omissions to determine if the defendant's conduct is within the proscriptions.  That inquiry comes after the simple threshold step of noting that the defendant is a "person" covered by section 1592(a)(1).  We now turn to the conduct-proscribing language of subparagraph (A) and how it applies to Mr. Shadadpuri's conduct.

## B

Section 1592(a)(1)(A) forbids any person to "enter, introduce, or attempt to enter or introduce" merchandise into the United States by certain means with a certain intent or lack of care.  We need not and do not decide

---

[5]    We do not address whether *Hitachi* or other decisions might bear on the scope of "enter" in the conduct-specifying language of section 1592(a)(1)(A), an issue we do not decide.  As to the "introduce" language of that provision, our decision today necessarily controls over any contrary implication that might be drawn from *Hitachi*.

whether Mr. Shadadpuri attempted to or did "enter" the merchandise at issue, and we therefore do not address the relevance to that question of statutory limitations on what persons are authorized to "enter" merchandise under 19 U.S.C. § 1484. We rely instead on the "introduce" language of section 1592(a)(1)(A). Controlling precedent has long established that "introduce" gives the statute a breadth that does not depend on resolving the issues that "enter" raises. And the term "introduce" readily covers the conduct of Mr. Shadadpuri.

The Supreme Court established the breadth of "introduce" in *United States v. 25 Packages of Panama Hats*, 231 U.S. 358 (1913). The statute at issue was section 9 of the 1890 Act, 26 Stat. 131, 135, as amended in 1909. (*Mescall* involved section 9 before the 1909 amendment.) In the amended form, the statute provided for forfeiture of merchandise, and criminal punishment, "if any consignor, seller, owner, importer, consignee, agent, or other person or persons, shall enter or introduce, or attempt to enter or introduce, into the commerce of the United States, any imported merchandise by means of any fraudulent or false invoice" or certain other acts or omissions. Tariff Act of 1909, § 28, 36 Stat. 11, 97 (Aug. 5, 1909), quoted in *Panama Hats*, 231 U.S. at 359–60. Consignors shipped merchandise to the United States with invoices that "falsely and fraudulently undervalued the merchandise," 231 U.S. at 359—invoices delivered to an American consulate abroad as required for ultimate entry in the United States, Tariff Act of 1909, § 28, 36 Stat. at 91–92 (amending Act of June 10, 1890, §§ 3, 4, 26 Stat. at 131–32). When the merchandise arrived in New York, neither the consignee nor anyone else called for it or took steps to enter it, so the merchandise was stored by customs officials. 231 U.S. at 359. The Supreme Court held that the statute applied to the "goods not technically entered at the New York customs house," *id.*, based on the word "introduce" added to the statute in 1909.

The Court explained that, before 1909, the statute provided for forfeiture "if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice." 26 Stat. at 135, quoted at 231 U.S. at 360. Several district court cases had "held that the language used did not cover the case of fraud by the consignor, nor could the goods be forfeited for the wrongful conduct of any person if the act preceded the making of the documents or taking any of the steps necessary to enter the goods." 231 U.S. at 360 (citing *United States v. 646 Half Boxes of Figs*, 164 F. 778 (E.D.N.Y. 1908), and *United States v. One Trunk*, 171 F. 772 (S.D.N.Y. 1909) (L. Hand, J.)). "In order to close these loopholes and to make the act more effective," the Court explained, Congress amended the statute not only to add "consignor or seller" to the enumerated persons covered (months before *Mescall* confirmed that the listing was not restrictive anyway) but also, of particular importance, to "enlarge[] the scope of conduct for which the goods should be forfeited." 231 U.S. at 361. Specifically: "Instead of punishing only for entering or attempting to enter on a fraudulent invoice, it punished an attempt by such means 'to introduce any imported merchandise into the commerce of the United States.'" *Id.*

The Court explained that the new language was critical to broadening the statute's coverage:

This latter phrase necessarily included more than an attempt to enter, otherwise the amendment was inoperative against the consignor against whom it was specially aimed, for he does not, as such, make the declaration, sign the documents, or take any steps in entering or attempting to enter the goods. When he makes the false invoice in a foreign country there is no extraterritorial operation of the statute whereby he can be criminally punished for his fraud. But when the consignor

made the fraudulent undervaluation in the for-
eign country, and on such false invoice the goods
were shipped, and arrived consigned to a mer-
chant in New York, the merchandise was within
the protection and subject to the penalties of the
commercial regulations of this country, even
though the consignor was beyond the seas and
outside the court's jurisdiction.

*Id.* The Court concluded:

[I]n the present case when the goods, fraudulently
undervalued and consigned to a person in New
York, arrived at the port of entry there was an at-
tempt to introduce them into the commerce of the
United States. When they were unloaded and
placed in General Order [official custody in a cus-
toms warehouse] they were actually introduced
into that commerce, within the meaning of the
statute intended to prevent frauds on the customs.

*Id.* at 362. *See also United States v. 18 Packages of Dental
Instruments*, 230 F. 564 (3d Cir. 1916).

*Panama Hats* confirms that, whatever the full scope
of "enter" may be, "introduce" in section 1592(a)(1)(A)
means that the statute is broad enough to reach acts
beyond the act of filing with customs officials papers that
"enter" goods into United States commerce. *Panama Hats*
establishes that "introduce" is a flexible and broad term
added to ensure that the statute was not restricted to the
"technical" process of "entering" goods. It is broad enough
to cover, among other things, actions completed before
any formal entry filings made to effectuate release of
imported goods. We need not attempt to define the reach
of the term. Under the rationale of *Panama Hats*, the
term covers actions that bring goods to the threshold of
the process of entry by moving goods into CBP custody in
the United States and providing critical documents (such
as invoices indicating value) for use in the filing of papers

for a contemplated release into United States commerce even if no release ever occurs.

What Mr. Shadadpuri did comes within the common-sense, flexible understanding of the "introduce" language of section 1592(a)(1)(A). He "imported men's suits through one or more of his companies." Gov't Facts at 1. While suits invoiced to one company were in transit, he "caused the shipments of the imported merchandise to be transferred" to Trek by "direct[ing]" the customs broker to make the transfer. *Id.* at 1–2, 4. Himself and through his aides, he sent manufacturers' invoices to the customs broker for the broker's use in completing the entry filings to secure release of the merchandise from CBP custody into United States commerce. *Supra* pp. 7–8. By this activity, he did everything short of the final step of preparing the CBP Form 7501s and submitting them and other required papers to make formal entry. He thereby "introduced" the suits into United States commerce.

Applying the statute to Mr. Shadadpuri does not require any piercing of the corporate veil. Rather, we hold that Mr. Shadadpuri's own acts come within the language of subparagraph (A). It is longstanding agency law that an agent who actually commits a tort is generally liable for the tort along with the principal, even though the agent was acting for the principal. *Restatement (Second) of Agency* § 343 (1958); *Restatement (Third) of Agency* § 7.01 (2006). That rule applies, in particular, when a corporate officer is acting for the corporation. 3A *Fletcher Cyc. Corp.* § 1135 (2014). We see no basis for reading section 1592(a)(1)(A) to depart from the core principle, reflected in that background law, that a person who personally commits a wrongful act is not relieved of liability because the person was acting for another. *See United States v. Matthews*, 533 F. Supp. 2d 1307, 1314 (Ct. Int'l Trade 2007), *aff'd*, 329 F. App'x 282 (Fed. Cir. 2009); *United States v. Appendagez, Inc.*, 560 F. Supp. 50, 54–55 (Ct. Int'l Trade 1983). That is as far as we go or

need to go in this case. We do not hold Mr. Shadadpuri liable because of his prominent officer or owner status in a corporation that committed a subparagraph (A) violation. We hold him liable because he personally committed a violation of subparagraph (A).

Relatedly, applying the statute to Mr. Shadadpuri in the circumstances presented is consistent with Congress's specification of a separate rule for aiding or abetting, stated in subparagraph (B) of section 1592(a)(1). That subparagraph prohibits a person from aiding or abetting another's violation of subparagraph (A), thus creating a form of liability for those who play certain roles in an underlying violation short of committing the violation. And this court has recognized a knowledge requirement inherent in "aiding or abetting." *Hitachi*, 172 F.3d at 1338. In this case, however, we hold that Mr. Shadadpuri himself committed a violation of subparagraph (A). This ruling does not weaken the requirements for "aiding or abetting" liability by those who do not violate subparagraph (A).

Finally, we may rest the decision here on the "introduce" language of section 1592(a)(1)(A) even though the parties did not specifically focus on that language in the Court of International Trade or in their briefs to the panel. The government invoked the entirety of the subparagraph in the Court of International Trade, without limiting itself to the "enter" language. The judgment of that court is not limited to one term within subparagraph (A), or even to subparagraph (A) as a whole, instead imposing liability for violating section 1592(a) generally. And it was not until their last-round brief in that court that defendants argued, as Mr. Shadadpuri argues in this court, that only an importer of record can violate subparagraph (A). It is a direct answer to that broad contention to hold that, whatever may be true for "enter," the "introduce" language of subparagraph (A) covers acts by persons other than importers of record.

The Supreme Court has made clear that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see Allen v. State Bd. of Elections*, 393 U.S. 544, 553–54 (1969). The power must be exercised fairly and prudently, but we see no impediment to relying on the "introduce" language of section 1592(a)(1)(A) here. Our doing so addresses the express judgment on appeal and responds to Mr. Shadadpuri's contention. The "introduce" language has a meaning that avoids issues presented by the "enter" language and that requires liability on the undisputed (mostly admitted) facts established by the record. These liability-entailing facts could not change, so a remand for application of "introduce" would be wasteful. In these circumstances, affirming liability based on the "introduce" language is fair, prudent, and efficient.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of International Trade.

**AFFIRMED**